UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLAUDETTE GERONIMO, | |
| Plaintiff, | CIVIL ACTION NO. 3:20-CV-02145 |
| v. | |
| POTTSVILLE FORD d/b/a SANDS FORD OF POTTSVILLE, | (MEHALCHICK, J.) |
| Defendant. | |

**MEMORANDUM**

This action was commenced upon the filing of a complaint by Claudette Geronimo ("Geronimo") against defendant Pottsville Ford d/b/a/ Sands Ford of Pottsville ("Pottsville Ford") for alleged disability and sex discrimination. (Doc. 1). Before the Court is a motion for summary judgment and a motion to dismiss both filed by Pottsville Ford. (Doc. 26; Doc. 36). For the following reasons, Pottsville Ford's motion for summary judgment will be **GRANTED** and its motion to dismiss will be **DENIED** as **MOOT**. (Doc. 26; Doc. 36).

**I.    PROCEDURAL AND FACTUAL BACKGROUND**

A.  PROCEDURAL BACKGROUND

Geronimo commenced this action by filing a complaint against Pottsville Ford on November 18, 2020. (Doc. 1). Therein, she alleged Pottsville Ford had violated the Americans with Disabilities Act ("ADA") by failing to accommodate her disabilities and Title VII of the Civil Rights Act of 1964 ("Title VII") by discriminating against her on the basis of sex and national origin. (Doc. 1, at 6-9). On December 14, 2020, Pottsville Ford filed a motion to dismiss. (Doc. 7). The motion was granted on the merits on September 14, 2021. (Doc. 19; Doc. 20). Geronimo filed an amended complaint on November 2, 2021. (Doc. 24). Therein,

she re-alleges two counts: Count I: Violation of the Americans Disability Act for failing to accommodate her disabilities of dyslexia and asthma (Doc. 24, ¶¶ 41-57), and Count II: Discrimination Based on Sex in violation of Title VII. (Doc. 24, ¶¶ 58-66).

In response, Pottsville Ford filed a motion to dismiss along with a brief in support on November 18, 2021. (Doc. 26). Geronimo filed a brief in opposition on December 6, 2021. (Doc. 29). Without a ruling on this motion, the parties proceeded through fact discovery.[1] On August 31, 2022, Pottsville Ford filed a motion for summary judgment, along with a statement of facts and a brief in support. (Doc. 36; Doc. 36-1; Doc. 37). Geronimo filed an "Answer to Summary Judgment" on September 13, 2022, therein including a statement of material facts. (Doc. 38). Accordingly, both the motion to dismiss and motion for summary judgment are ripe in this case.

B. FACTUAL BACKGROUND

The following factual summary is taken from the record and Pottsville Ford's statement of facts.[2] Geronimo is a former employee of Pottsville Ford. (Doc. 36-1, at 12-14).

---

[1] Because the Court has reviewed Pottsville Ford's motion for summary judgment on the merits and will grant the motion, Pottsville Ford's motion to dismiss is **DENIED** as **MOOT**. (Doc. 26).

[2] Whereas Geronimo submitted a statement of facts to accompany her "Answer" to Pottsville Ford's motion, she has failed to provide the Court with citations to the record in accordance with Local Rule 56.1. Pursuant Local Rule 56.1, a party's statement of facts should enable "the court to identify contested facts expeditiously and [prevent] factual disputes from becoming obscured by a lengthy record." *Pinegar v. Shinseki*, No. CIV.A.1:07-CV-0313, 2009 WL 1324125, at *1 (M.D. Pa. May 12, 2009). "Local Rule 56.1 was promulgated to bring greater efficiency to the work of the judges of the Middle District." *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018). "[T]he Rule is essential to the Court's resolution of a summary judgment motion' due to its role in 'organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence." *Weitzner*, 909 F.3d at 613 (internal citations omitted). Accordingly, the Court will not scour the record for support of Geronimo's assertions.
*(footnote continued on next page)*

On her application, she checked the box indicating she could "perform the essential functions of the job for which [she was] applying with or without reasonable accommodation." (Doc. 36-1, at 14). This case implicates two disabilities for which Geronimo argues she should have been accommodated: her dyslexia and her asthma. (Doc. 24, at 6-8). While Geronimo did not indicate on her application that she has dyslexia, she testified that at the time of her initial interview, she informed Pottsville Ford representatives Brandon Burkhart ("Burkhart") and Chris Halvin ("Halvin") of her disability. (Doc. 36-1, at 11-12). Geronimo also testified that dyslexia is her only disability, stating that she did not have any condition that would interfere with her ability to talk and listen to people, selling cars, going as far to say "I don't have a disability hands on. I can drive. I take care of my kids. I have provided for my own kids. And I do everything. I'm 28 years old and I've been doing everything all my life." (Doc. 36-1, at 13). Acknowledging her dyslexia, Pottsville Ford allowed her to take testing required to become a sales representative several times. (Doc. 36-1, ¶ 12, at 14-16). Pottsville Ford also allowed Geronimo to take the test on paper instead of on the computer and gave her unlimited time to pass the test, all while being paid, and eventually even let her cheat in order to pass. (Doc. 36-1, ¶ 12, at 14-16). Also, Geronimo was not penalized for how long it took her to complete the required tests. (Doc. 36-1, at 15). Ultimately, she passed the tests and was able to sell cars at Pottsville Ford. (Doc. 36-1, ¶ 12, at 14-16).

---

Because Geronimo is the non-moving part for the instant motion, the Court will do its due diligence in completing a comprehensive review of the record. However, the motion will be analyzed primarily in accordance with the statement of facts provided by Pottsville Ford, as their factual assertions are clearly supported with citations to the record. *See WALTER PARFAITE, Plaintiff, v. KIM LIPPINCOTT, Defendant.*, No. 3:22-CV-00316, 2024 WL 778410, at *4 (M.D. Pa. Feb. 26, 2024) (analyzing a motion for summary judgment using facts provided only by the party who supported their statement of facts with citations to the record, as required by Local Rule 56).

In her amended complaint, Geronimo alleges she has asthma and that she advised Pottsville Ford upon hire that she would need "accommodations to allow for breathing treatments[.]" (Doc. 24, ¶ 45). During her deposition, Geronimo testified that she told Burkhart and Halvin that she had asthma, but the record does not support that she requested any accommodations. (Doc. 36-1, at 64-65). Geronimo purportedly suffered an asthma attack one day while at work at Pottsville Ford. (Doc. 36-1, ¶¶ 5-7, at 23-28). Geronimo asked for assistance, but was denied, causing her to have to call 911 form her car and drive part of the way to the hospital, before meeting with an emergency personnel who drove her the rest of the way. (Doc. 36-1, ¶ 8, at 23-24). Pottsville Ford's representatives, Burkhart and Halvin, testified that they had no knowledge of Geronimo's asthma or the asthma attack. (Doc. 31-6, ¶ 7, at 134, 152).

Geronimo was terminated on March 24, 2020. (Doc. 3-1, at 197). In her amended complaint, she alleges she was terminated for not meeting her sales quota while a male colleague hired after her was able to continue his job despite also not meeting his quota. (Doc. 24, ¶ 65). However, record reflects that this male employee worked reduced hours and focused on government sales and repeat customers, not new customers like Geronimo. (Doc. 36-1, at 195). Additionally, prior to her termination on January 31, 2020, Pottsville Ford owner Jarod Sands issued Geronimo an "Employee Warning Report." (Doc. 36-1, ¶ 15, at 186-87). Geronimo signed off on the report on February 3, 2020. (Doc. 36-1, ¶ 15, at 186-87). Notes accompanying the report reflect that Geronimo's sales average was "far below acceptable performance." (Doc. 36-1, ¶ 15, at 186-87). The report also reflects that her work performance was "deficient" and that she had "not shown improvement in some of the critical minimum standards for success." (Doc. 36-1, ¶ 15, at 186). The report specifically points to Geronimo's

4

communication skills (inability to make a quality phone call or send a quality email to unsold customers), product knowledge (characterized as far below what is required to speak to customers), manager communication (failure to communicate customer status), and process (failure to follow established sales process). (Doc. 36-1, ¶ 15, at 186). According to the report, Geronimo was to be terminated on March 31, 2020, if her average sales total did not equal 8 cars for February and March. (Doc. 36-1, ¶ 15, at 186-87).

Geronimo received and signed off on another Employee Warning Report on March 5, 2020. (Doc. 36-1, ¶ 16, at 184-85). This reported noted that Geronimo had failed to meet her February goal and cited similar concerns to those previously detailed in Geronimo's first Employee Warning Report. (Doc. 36-1, ¶ 16, at 184-85). The report also reflects that members of the sales team had complained that Geronimo was being bothersome and making nonsense statements to them as they were trying to get their work done. (Doc. 36-1, ¶ 16, at 184-85). Geronimo was warned she would be terminated on April 1, 2020, if there was no improvement in her work performance. (Doc. 36-1, ¶ 16). Around this time, Pottsville Ford closed indefinitely due to COVID-19. (Doc. 36-1, ¶ 17, at 197). On March 24, 2020, Plaintiff was terminated due to poor sales performance prior to the COVID-19 outbreak. (Doc. 36-1, ¶ 17, at 197).

## II.  MOTION FOR SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return

a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid

summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential).

### III.   DISCUSSION

#### A.   FAILURE TO ACCOMMODATE UNDER THE ADA

In her amended complaint, Geronimo alleges that Pottsville Ford violated the ADA when it failed to accommodate her disabilities of asthma and dyslexia. (Doc. 24, at 6-8). She alleges that during her employment, despite having informed management of her dyslexia, she was forced to take a lengthy exam "to be a fully functioning sales representative."(Doc. 24, ¶¶ 49, 52, 53). After four months of attempts, Geronimo eventually passed the required testing. (Doc. 24, ¶ 53). Geronimo also alleges Pottsville Ford violated the ADA when she suffered a "severe, life-threatening asthma attack" and nobody on site offered her any aid. (Doc. 24, ¶¶ 46, 47). According to Pottsville Ford, Geronimo has failed to meet her burden at the summary judgment stage of this litigation because no reasonable juror could disagree that she was provided an accommodation for her dyslexia and that she never requested accommodations for her asthma. (Doc. 37, at 7).

Under the ADA, an employee discriminates when they fail to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity...." *Phillips v. Center for Vision Loss*, 2017 WL 839465, at *11 (M.D. Pa. March 3, 2017) (citing 42 U.S.C. § 12112(b)(5)(A)). "A disabled employee may establish a prima facie case under the ADA if she shows that she can perform the essential

7

function of the job with reasonable accommodation and that the employer refused to make such an accommodation." *Turner v. Hershey Chocolate U.S.,* 440 F.3d 604, 610 (3d Cir. 2006) (citing *Skerski v. Time Warner Cable Co., a Div. of Time Warner Ent. Co., L.P.,* 257 F.3d 273, 284 (3d Cir. 2001))."[T]he failure to reasonably accommodate a disabled and qualified employee constitutes an adverse employment action for purposes of the ADA." *Turner,* 440 F.3d at 611, n.4.

To succeed on her failure to accommodate claims, Geronimo must prove "(1) [s]he was disabled and his employer knew it; (2) [s]he requested an accommodation or assistance; (3) [her] employer did not make a good faith effort to assist; and (4) [s]he could have been reasonably accommodated. *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006); *see also Capps v. Mondelez Glob., LLC,* 847 F.3d 144, 157 (3d Cir. 2017); *see also Drizos v. PNC Invs. LLC*, No. 22-1736, 2023 WL 4986496, at *5 (3d Cir. Aug. 3, 2023). "The ADA does not define the term 'reasonable accommodation' with much precision." *JACQUELINE POWELL Plaintiff, v. BOSCOV'S DEPARTMENT STORE, LLC, Defendant.,* No. 3:22-CV-01045, 2024 WL 666485, at *18 (M.D. Pa. Feb. 16, 2024); *see* 42 U.S.C. § 12111(9). However, the Equal Opportunity Commission ("EEOC") recognizes reasonable accommodations to include "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). When a qualified, disabled employee believes they could benefit from a reasonable accommodation, they must request the accommodation from their employer and then engage in an "interactive process during which the employer and employee identify the precise limitations resulting from the disability and the potential

reasonable accommodations that could overcome them." *Bielich v. Johnson & Johnson, Inc.*, 6 F. Supp. 3d 589, 617 (W.D. Pa. 2014). see also 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."). Accordingly, to trigger Pottsville Ford's duty to accommodate, Geronimo must have notified its representatives that she required reasonable accommodations for her disabilities. *Schillaci v. Cargill Meat Solutions*, No. 3:CV–12–561, 2012 WL 6589941, at *4 (M.D. Pa. December 18, 2012). "[T]he interactive process is a means to an end, and a defendant is not liable under the ADA for failure to engage in the interactive process if the plaintiff obtained a reasonable accommodation." *JACQUELINE POWELL Plaintiff*, 2024 WL 666485, at *18.

**1. Geronimo's Dyslexia**

Regarding Geronimo's dyslexia, the record contains conflicting testimony surrounding Pottsville Ford's knowledge of Geronimo's dyslexia and whether Geronimo requested an accommodation or exemption for her employment tests.[3] (Doc. 36-1, at 14-16, 129, 151). Whereas Pottsville Ford still required Geronimo to take the tests, the record supports that Pottsville Ford made some efforts to accommodate Geronimo and to assist her in completing her examinations. (Doc. 36-1, at 14-16, 20-22). According to the ADA, a reasonable accommodation relating to tests may be "appropriate adjustment or modifications

---

[3] The parties do not dispute that dyslexia is recognized as a disability under the ADA or that Geronimo was a qualified individual under the ADA who could perform the essential job functions of her role.

of examinations." 42 U.S.C. § 12111(9)(B). Here, while the tests themselves were not modified on Geronimo's behalf, Geronimo testified that she was permitted to take the tests multiple times, print them out to complete on paper instead of the computer, and that she was extended as much time as she needed to pass the tests. (Doc. 36-1, at 14-16). Also, that she did not receive any penalty for taking longer to complete the tests and was eventually permitted to cheat. (Doc. 36-1, at 14-16, 20-22). These accommodations helped her ultimately pass the test and Geronimo subsequently was able to sell cars as a "fully functioning sales agent," which was her essential job function. (Doc. 36-1, at 16).

While Geronimo may not have received the accommodation she asked for, "[a]n employer is not obligated to provide an employee the accommodation [s]he requests or prefers, the employer need only provide *some reasonable accommodation*." *Yovtcheva v. City of Phila. Water Dep't*, 518 F. App'x 116, 122 (3d Cir. 2013) (quoting *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996) (citation omitted)) (emphasis added). Still, Geronimo argues she was not accommodated and that she was disadvantaged by how long her testing took to complete (although she offers little explanation as to why). (Doc. 38, at 12). This is where Geronimo's claim fails. In a failure to accommodate case, the plaintiff has the burden to identify an accommodation that would help them perform their essential job functions and provide that it is reasonable. *Walton v. Mental Health Ass'n. of Se. Pennsylvania*, 168 F.3d 661, 670 (3d Cir. 1999). Geronimo has failed to identify a specific, proposed accommodation that she was refused and offers no evidence that her proposed accommodations would have allowed her to perform the essential functions of her job. Based on the record, it appears to the Court that Pottsville Ford did provide Geronimo accommodations, including allowing her to cheat, and that these accommodations helped her pass her required tests to start selling

cars, her essential job function. (Doc. 36-1, at 14-16). Geronimo has offered no evidence to the contrary. No reasonable fact finder could conclude otherwise. Accordingly, Pottsville Ford is entitled to summary judgment on Geronimo's failure to accommodate claim as it pertains to her dyslexia.

### 2. Geronimo's Asthma

Regarding Geronimo's asthma, the record contains contradictory evidence regarding whether Pottsville Ford was aware of Geronimo's disability.[4] (Doc. 31-6, ¶ 7, at 64, 134, 152). However, the record is clear that Geronimo failed to propose a reasonable accommodation to Pottsville Ford for her asthma. To succeed on her claim, Geronimo must prove Pottsville Ford had "enough information to know of 'both the disability and *desire for an accommodation'*, or circumstances must at least be sufficient to cause a reasonable employer to make appropriate inquiries about the possible need for an accommodation." *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 332 (3d Cir. 2003) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999).  (internal citations omitted & emphasis added). While the law does not require "any formal mechanism or 'magic words,'" there must be some direct communication or notification sufficient to have put Pottsville Ford on notice that Geronimo needed an accommodation. *Conneen*, 334 F.3d at 332 (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999)) In this case, the record is clearly devoid of any such communication.

First, while Geronimo testified that she told Burkhart and Halvin that she had asthma, the record does not reflect that Geronimo asked for an accommodation. (Doc. 36-1, at 27).

---

[4] The parties do not dispute that asthma is a recognized disability under the ADA.

Geronimo fails to point to any evidence to the contrary. Next, when asked if when she first started at Pottsville Ford Geronimo informed her employer she needed an accommodation for her asthma, Geronimo answered: "No." (Doc. 36-1, at 27). Further, on her application to work at Pottsville Ford, Geronimo did not indicate that she had asthma or any condition that would require an accommodation. (Doc. 36-1, at 13). When asked about her application, Geronimo responded:

> I don't have a disability selling cars. I don't have a disability talking to a person. I don't have a disability of helping a person looking for a car, listening to their story, accompanying them with anything I don't have a disability hands on. I can drive. I take care of my kids. I have provided for my own kids. And I do everything. I'm 28 years old and I've been doing everything all my life.

(Doc. 36-1, at 13).

Based on the record, the only time Geronimo requested any assistance because of her asthma was during the severe asthma attack she suffered while at work. (Doc. 36-1, at 23). To the extent that Geronimo hopes to reargue that denial of medical care and/or assistance during her severe asthma attack constitutes failure to accommodate, this Court already opined on the issue, stating "[t]he denial of medical treatment is not recognized as a reasonable accommodation under the ADA, and, thus, falls outside the scope of the ADA's coverage." (Doc. 19, at 12); *Geronimo v. Pottsville Ford*, No. 3:20-CV-02145, 2021 WL 4189629, at *5 (M.D. Pa. Sept. 14, 2021). This pronouncement is supported by the Third Circuit's conclusion that the denial of medical treatment is not "encompassed by the ADA's prohibitions." *Iseley v. Beard,* 200 F. App'x 137, 142 (3d Cir. 2006); *see also Davila v. Cnty. Of Lackawanna*, 2013 WL 1628261, at *4 (M.D.P.A. April 15, 2013) ("Furthermore, the court agrees with Judge Schwab that the ADA does not cover so-called 'denial of treatment' cases.") (citation omitted). Accordingly, no reasonable juror could conclude Pottsville Ford is liable to Geronimo under

the ADA for her claim revolving around her asthma. The Court will therefore grant Pottsville Ford's motion for summary judgment as to Geronimo's failure to accommodate claims.

B. SEX DISCRIMINATION UNDER TITLE VII

Geronimo asserts her sex discrimination claim under Title VII under the premise that she was discriminated against when she was terminated for not meeting her sales quota but her male co-worker who also did not meet his quota was not. (Doc. 38, at 16). According to Pottsville Ford, Geronimo's "documented deficiencies and lack of improvement in the areas of communication, both with customers and management, product knowledge, and sales processes, combined with the inadequate sales, directly led to the termination decision. [Geronimo's] gender played no role." (Doc. 37, at 11). Upon a review of the record, the Court agrees.

To establish disparate treatment discrimination based on sex by a current employer, a plaintiff must make out a prima facie case of discrimination; i.e., she must demonstrate that: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) her employer subjected her to an adverse employment action; and (4) the circumstances of the adverse employment action give rise to an inference of discrimination. *See McNamara v. Susquehanna Cty.*, Civil Action No. 3:17-cv-02182, 2018 WL 2183266, at *3–4 (M.D. Pa. May 11, 2018); *see also Hobson v. St. Luke's Hosp. & Health Network*, 735 F. Supp. 2d 206, 213 (E.D. Pa. 2010). Once a plaintiff makes out a prima facie case of sex discrimination, the burden of production shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action. *Bowersox v. Pa. Dep't of Corr.*, Civil No. 4:180-cv-000384, 2021 WL 674225, at *7–8, (M.D. Pa. Feb. 22, 2021). To constitute an adverse employment action, the action must be "serious and tangible enough to alter an employee's compensation, terms,

conditions, or privileges of employment." *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001). In this case, Geronimo's termination qualifies as an adverse action. *See Carroll v. Acme Truck Line, Inc.*, 992 F. Supp. 2d 512, 529-30 (W.D. Pa. 2014).

Geronimo has the burden of "adduc[ing] enough facts to allow a jury to infer that her termination was the result of discrimination." *Carroll*, 992 F. Supp. 2d at 529-30. She must establish a nexus between sex discrimination and her termination. *See Scruggs v. Philadelphia Hous. Auth.*, No. CV 22-510, 2024 WL 388391, at *8 (E.D. Pa. Jan. 31, 2024). Here, she has failed to do so. First, she has pointed to no evidence supporting her contention that her termination was provoked by her sex. *Carroll*, 992 F. Supp. 2d at 30. (granting defendant summary judgment because there was "not a scintilla of evidence that [Defendant] was motivated to terminate Plaintiff because of her gender"). Second, "[t]he circumstances of [Geronimo's] termination do not give rise to an inference of discrimination." *Scruggs*, 2024 WL 388391, at *8. The record supports that Geronimo was terminated due to her poor job performance and in accordance with several warnings that she would be terminated if she failed to improve. (Doc. 36-1, at 184-87, 197). Both Burkhart and Halvin testified that Geronimo struggled to meet her sales quota and had poor communication skills. (Doc. 36-1, at 131, 154). Halvin also discussed her "sub standard work conduct and tardiness." (Doc. 36-1, at 1654). The record therefore supports Geronimo was terminated because of her performance, not her gender.

To Geronimo's point that her male counterpart who also was not meeting his quota was not terminated, the record supplies a justification that has nothing to do with gender. Unlike Geronimo, the male agent was not a full-time sales representative. (Doc. 36-1, at 197). Also, he did not work with new buyers but with return customers and government contracts,

and was head of the "co-stars division," meaning he managed additional fleets. (Doc. 36-1, at 131, 197). Also, the male agent retired soon after Geronimo's termination. (Doc. 36-1, at 132). Based on the evidence supplied in this case, a reasonable juror could not conclude Geronimo's termination was based on her sex rather than the host of reasons provided in the record, including Barkhart's testimony, Halvin's testimony, sales data documentation, and Geronimo's multiple disciplinary records. (Doc. 36-1, at 108-110, 131, 154-55, 184-87, 197). Accordingly, Pottsville Ford is entitled to summary judgment on Geronimo's sex discrimination claim.

## IV.  CONCLUSION

Based on the forgoing, Pottsville Ford's motion for summary judgment is **GRANTED**. (Doc. 36). Both Geronimo's failure to accommodate claim under the ADA and sex discrimination claim under Title VII are **DISMISSED**. Pottsville Ford's motion to dismiss is **DENIED** as **MOOT**. (Doc. 26).

An appropriate Order follows.

Dated: March 29, 2024                                        *s/ Karoline Mehalchick*
                                                                                  **KAROLINE MEHALCHICK**
                                                                                  **United States District Judge**